IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

KATHRYN FRANKLIN                                                                                      PLAINTIFF

V.                              CASE NO. 5:18-CV-00075 JLH-JTK

SOCIAL SECURITY ADMINISTRATION                                                           DEFENDANT

## RECOMMENDED DISPOSITION

I. **Procedures for filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to District Judge J. Leon Holmes. You may file written objections to this Recommendation. If you file objections, they must be specific and must include the factual or legal basis for your objection.

Your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Holmes can adopt this Recommendation without independently reviewing the record. By not objecting, you may also waive any right to appeal questions of fact.

II. **Introduction:**

Plaintiff, Kathryn Franklin, applied for disability benefits on June 27, 2015, alleging a disability onset date of December 30, 2014 (Tr. at 11). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 24). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Franklin has requested judicial review.

For the reasons stated below, this Court should affirm the decision of the Commissioner.

### III. The Commissioner's Decision:

The ALJ found that Franklin had not engaged in substantial gainful activity since the alleged onset date of December 30, 2014. (Tr. at 14). The ALJ found, at Step Two of the sequential five-step analysis, that Franklin had the following medically determinable impairments: cervical muscle strain, lumbar back sprain, neck muscle spasms, high blood pressure, carpal tunnel syndrome, obesity, and anxiety. (Tr. at 14).

At Step Three, the ALJ determined that Franklin's impairments did not meet or equal a listed impairment. *Id*. Before proceeding to Step Four, the ALJ determined that Franklin had the residual functional capacity ("RFC") to perform sedentary work with restrictions: 1) she could only occasionally climb, stoop, kneel, crawl, and crouch; 2) she could only occasional balance and could not work around unprotected heights, ladders, or scaffolds; 3) she would be limited to only frequent reaching and handling; 4) she could perform unskilled work, where she could remember, understand, and follow concrete instructions and have superficial contact with supervisors, co-workers, and the public. (Tr. at 16).

Based on that RFC, the ALJ determined that Franklin was able to perform past relevant work as a surveillance system monitor. (Tr. at 24). Based on that determination, the ALJ held that Franklin was not disabled. *Id*.

### IV. Discussion:

A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it

adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

B. Franklin's Arguments on Appeal

Franklin argues that substantial evidence does not support the ALJ's decision to deny benefits. She does not disagree with the ALJ's determinations at Steps One through Three, but contends only that the ALJ improperly classified past relevant work as surveillance system monitor, and that she could not return to her past work. The Court therefore, will limit its discussion to the Step Four classification of past relevant work. No review of the medical record is necessary, as it is not in dispute.

Franklin described her past work as watching multiple TV monitors for suspicious activity, recording what she saw in a log book, and reporting any activity to a security or police officer when necessary. (Tr. at 92-97). She contends that because she kept record of her duties in a log book, her work more closely aligned with security guard, and not surveillance system monitor. This matters because security guard is an SVP 3 job, which is not unskilled work. Surveillance system monitor is an SVP 2 job, at the unskilled level (which matched the RFC in this case).[1] Unskilled work is not complex. See 20 C.F.R. §§ 404.1568(a), 416.968(b) SSR 83-10 (unskilled work needs little or no judgment to do simple duties that can be learned on the job in a short period

---

[1] SVP 2 covers occupations that require more than a short demonstration but not more than one month of vocational preparation. *Hulsey v. Astrue*, 622 F.3d 917, 923 (8th Cir. 2010); *Dictionary of Occupational Titles* app. C, at 1009 (4th ed. 1991).

3

of time). The ALJ found at Step Four that Franklin could return to past work as a surveillance system monitor because it was simple unskilled work. Franklin says her job was higher level work, like that of a security guard, so she could not return to it.

Franklin points to the Dictionary of Occupational Titles ("DOT") classifications of the two jobs to make her case. The surveillance system monitor job at 379.367-010 in the DOT reads as follows:

> Monitors premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors, and notifies authorities by telephone of need for corrective action: Observes television screens that transmit in sequence views of transportation facility sites. Pushes hold button to maintain surveillance of location where incident is developing, and telephones police or other designated agency to notify authorities of location of disruptive activity. Adjusts monitor controls when required to improve reception, and notifies repair service of equipment malfunctions. *https://occupationalinfo.org/*.

The security guard position at 372.667-034 in the DOT reads as follows:

> Patrols, periodically, buildings and grounds of industrial plant or commercial establishment, docks, logging camp area, or work site. Examines doors, windows, and gates to determine that they are secure. Warns violators of rule infractions, such as loitering, smoking, or carrying forbidden articles, and apprehends or expels miscreants. Inspects equipment and machinery to ascertain if tampering has occurred. Watches for and reports irregularities, such as fire hazards, leaking water pipes, and security doors left unlocked. Observes departing personnel to guard against theft of company property. Sounds alarm or calls police or fire department by telephone in case of fire or presence of unauthorized persons. Permits authorized persons to enter property. May register at watch stations to record time of inspection trips. May record data, such as property damage, unusual occurrences, and malfunctioning of machinery or equipment, for use of supervisory staff. May perform janitorial duties and set thermostatic controls to maintain specified temperature in buildings or cold storage rooms. May tend furnace or boiler. May be deputized to arrest trespassers. May regulate vehicle and pedestrian traffic at plant entrance to maintain orderly flow. . .*Id*.

On the work history report, Franklin said she "watched 101 surveillance cameras for the

campus police, answered the phone, and took reports." (Tr. at 291). She said she used technical skills, but did not specify in the work history report or at the hearing what those technical skills were. *Id.* Her testimony confirmed that she sat by herself, watched the monitors, kept a log book of activity, and reported what she saw to the duty officer. (Tr. at 93-96). This description matches the definition of unskilled, simple, repetitive work.

Franklin did not do many of the tasks a security guard would as set forth above (patrolling buildings, warning violators, inspecting equipment, observing personnel, sounding alarms, or perform janitorial duties). The only thing mentioned in the security job description that she did was record data for reporting to a supervisor. But the rest of the work for security guard suggested more than the unskilled work of surveillance system monitor. A security guard has variable interactions with others, and not just one supervisor, and he needs technical knowledge about locks, doors, fire hazards, alarm systems, machinery, and equipment. Franklin simply watched monitors and made notes.

Franklin cites to district court cases to show that recording data in a log book is an acquired skill. Certainly, Franklin would need to be able to read and write to do such work (she said she could read and write), and could be trained on how to do it, but the unskilled SVP 2 job of surveillance system monitor matches with those duties. (Tr. at 83). And transferability of skills (or whether Franklin acquired higher complexity skills) is a question for Step Five in the sequential analysis, and this case was decided at Step Four.[2] Furthermore, the test at Step Four is whether a

---

[2] Transferability of skills is an issue only when an individual's impairment(s), though severe, does not meet or equal the criteria in the Listing of Impairments at Step Three but does prevent the performance of past relevant work (PRW), and that work has been determined to be skilled or semiskilled.
SSR 82-41, 1982 SSR LEXIS 34, 1982 WL 31389, at *1 (Jan. 1, 1982); *Quinn v. Berryhill*, 2018 U.S. Dist. LEXIS 45083 *27 (D.S.D. March 20, 2018).

claimant can return to past work as it is "actually or generally" performed in the national economy. *See Martin v. Sullivan* 901 F.3d 1127, 1130 (8th Cir. 2005). So the past work need not exactly fit the DOT description of the job.

Moreover, the ALJ asked Franklin multiple times if she had training at the surveillance job, which would make a difference for the SVP level of the job. She said "no" more than once. (Tr. at 96, 99). SVP 2 jobs require little or no training. The RFC here was for simple work, with concrete instructions and only superficial contact with others, which mirrors the uncomplicated work she performed as a surveillance system monitor.

Finally, it is the claimant's burden to show that she could not perform past relevant work. *See Barrett v. Shalala*, 39 F.3d 1019, 1024 (8th Cir. 1994). In this case, Franklin's attorney did not dispute the classification of her past relevant work during the hearing, nor question the VE when he had the opportunity. (Tr. at 117). Franklin did not carry her burden at Step Four.

## V. **Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly construed Franklin's past relevant work. The finding that Franklin was not disabled within the meaning of the Social Security Act, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 11th day of January, 2018.

_____
UNITED STATES MAGISTRATE JUDGE